STATE, Respondent, *v.* ENGLISH, Appellant.

(No. 5,558.)

(Submitted September 12, 1924.  Decided October 11, 1924.)

[229 Pac. 727.]

*Intoxicating Liquors — Illegal Possession—Search-warrants— Issuance on "Affidavit"—On "Deposition"—Special Statute Controlling—Cross-examination—Evidence — Inadmissibility —Denial of New Trial not Reviewable on Appeal from Judgment.*

Intoxicating Liquors—Search-warrant—Examination of Complainant not Indispensable, When.

1. Where a deputy county attorney had presented a verified complaint for a search-warrant based upon the affidavit of another, and the district judge examined the latter under oath, the fact that he did not also examine the complainant himself, as required by section 12397, Revised Codes, did not render the warrant illegal, since the only information the complainant had was that obtained from the affiant and an examination of the former would have been useless.

Same—Search-warrant—Issuance on "Affidavit" Instead of on "Deposition"—Procedure Substantial Compliance With Statute.

2. Section 12397, Revised Codes, declares that a magistrate before issuing a search-warrant must take the deposition of any witness in writing. The warrant was issued upon an affidavit. *Held,* that the departure did not render the warrant illegal, the words "deposition" and "affidavit" having been used interchangeably in the chapter of the Codes relating to search-warrants.

Same—Search-warrant—Issuance on Affidavit—Special Statute Controlling.

3. *Held,* that if there be any conflict between the general provisions of the Codes relating to search-warrants which provide that before a search-warrant may issue the deposition of the complaint must be taken, and Chapter 116, Laws of 1923, dealing with search-warrants in liquor cases and providing that a warrant may issue upon complaint verified by affidavit, the latter, being special in character, is controlling in a prosecution for a violation of the liquor law.

Same—Search-warrant—Affidavit—Statement of Fact—What not a Conclusion.

4. An affidavit to the effect that affiant had purchased intoxicating liquor from a named person at a certain building, was the statement of a fact sufficient to justify the magistrate in finding from it that there was probable cause to believe that the person named was in possession of intoxicating liquor for unlawful purposes and in issuing a search-warrant, and was not objectionable as a statement of a mere conclusion.

[71 Mont. 343.]

Same—Cross-examination—What not Improper Curtailment.
    5.  Refusal to permit a witness for the state in a liquor prosecution
    to answer questions of a trivial character on his cross-examination,
    after he had been examined at great length upon every material
    matter brought out upon his direct examination, *held* insufficient to
    warrant reversal of the judgment.

Same—Search-warrant not Rendered Void by Falsity of Affidavit Shown
    on Trial of Defendant.
    6.  Where the affidavit upon which a search-warrant issued was
    sufficient to justify its issuance and the warrant itself was valid on
    its face, the proceedings thereunder could not be rendered void by
    evidence, sought to be introduced by defendant on his trial under
    a charge of illegal possession of liquor, tending to show that the
    affidavit was false, nor could the evidence procured by the search
    be rendered inadmissible by its falsity.

Same—Evidence of Unfitness of Liquor for Human Consumption Inad-
    missible.
    7.  In a prosecution for the illegal possession of moonshine whisky,
    evidence that the liquor seized was not fit for beverage purposes was
    inadmissible.

Criminal Law—Denial of New Trial not Reviewable on Appeal from
    Judgment.
    8.  An order denying a new trial in a criminal cause is not re-
    viewable on appeal from the judgment.

*Appeal from District Court, Custer County; S. D. McKin-
non, Judge.*

JAY ENGLISH was convicted of unlawfully possessing intoxi-
cating liquors and appeals from the judgment. Affirmed.

*Mr. Frank Hunter,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. L. A.
Foot,* Assistant Attorney General, and *Mr. Rudolph Nelstead,*
County Attorney of Custer County, for the State, submitted
a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued
the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

Jay English was convicted of unlawfully possessing intoxi-
cating liquor and has appealed from the judgment.

The information contained three counts. The first charged
the unlawful manufacture of intoxicating liquor, but that

charge was withdrawn. The second count charged unlawful sale, but upon that count the defendant was acquitted. The conviction was upon the third count.

On March 7, 1924, the deputy county attorney of Custer county presented to District Judge S. D. McKinnon a verified complaint together with the statement of one H. E. Ford, and upon these obtained a search-warrant, by virtue of which the sheriff searched the premises described in the warrant and made return that he found and seized a still, three barrels of mash, two glass jugs, each containing "moonshine whisky," and some other articles. At the hearing upon the return on March 22, the defendant herein appeared and moved the court to quash the search-warrant proceedings, and to forbid the use of the seized articles as evidence against him. The hearing, however, resulted in a judgment of forfeiture, but the judgment provided that the articles should not be destroyed until after the trial of the criminal case. At this trial, and over the objections of the defendant, the glass jugs with their contents were admitted in evidence as State's Exhibits 1 and 2, and error is predicated upon the ruling.

The procedure adopted by the defendant at the hearing upon the return of the search-warrant was not authorized by law. (Sec. 11105, Rev. Codes; *State* v. *Kelly*, 57 Mont. 123, 187 Pac. 637.) The verified claim required by the statute was not presented, but the court apparently treated the motion as sufficient for the purpose and permitted the defendant to be heard.

It is contended that the search-warrant proceedings were void from the beginning; that the evidence was obtained illegally; and that the court erred in refusing to order Exhibits 1 and 2 suppressed as evidence in the first instance, and in permitting them to be used upon this trial.

It is urged that Judge McKinnon was without authority to [1] issue the search-warrant because the provisions of section 12397, Revised Codes, were not observed. That section declares: "The magistrate must, before issuing the warrant,

examine on oath the complainant, and any witnesess he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them."

The order granting the application for the search-warrant recites: "The deputy county attorney, Ben Myers, and H. E. Ford appear before the court in chambers; H. E. Ford is sworn and examined by the court, and the court having heard the testimony of the said affiant finds that there is probable cause for the issuance of search-warrant for the property designated in the affidavit filed herein."

It may be conceded that the record fails to disclose that there was a literal compliance with the language of the section just quoted, in that it fails to disclose that the complainant, the deputy county attorney, was examined on oath, but from the verified complaint it is made apparent that the only information which the deputy county attorney had was that obtained from the witness Ford; hence to have examined him would have been an idle ceremony and something which the law does not require.

Again, attention is directed to the fact that Judge McKinnon [2] did not take the deposition of the witness Ford as he was required to do by section 12397; instead, the Ford statement appears in the form of an affidavit.

"An affidavit is a written declaration under oath, made without notice to the adverse party." (Sec. 10632, Rev. Codes.)

"A deposition is a written declaration under oath, made upon notice to the adverse party for the purpose of enabling him to attend and cross-examine." (*Id.*, sec. 10633.)

It is perfectly apparent that in enacting sections 12394–12414, our legislators did not observe the nice distinction which they created in enacting sections 10632 and 10633. In section 12396 it is declared: "A search-warrant cannot be issued but upon probable cause, supported by affidavit," *etc.*; and by section 12400 the magistrate is required to recite in the search-warrant that "proof, by affidavit, having been this

day made before me," *etc.* And again, section 12404 pro-
vides: "The magistrate must insert a direction in the warrant
that it be served in the daytime, unless the affidavits are posi-
tive that the property is on the person or in the place to be
searched, in which case he may insert a direction that it be
served at any time of the day or night."

These examples suffice to indicate that the terms "affidavit"
and "deposition" were employed loosely and interchangeably
to denote a statement in writing, subscribed and sworn to by
the person making it. Any other construction would render
the statute meaningless and defeat the very purpose of the
legislation; for if the term "deposition" as employed in sec-
tions 12397, 12398 and 12413 be given its technical legal mean-
ing, then it would follow that, before a search-warrant can
issue, the magistrate must first give notice to the person whose
premises are to be searched and afford him an opportunity to
appear and cross-examine the witnesses upon whose testimony
the warrant is sought to be obtained—an opportunity equally
available for the purpose of removing or destroying any evi-
dence of crime. Under such a construction a search-warrant
proceeding would be the veriest farce.

Section 11071, Revised Codes, as amended by section 1,
[3]  Chapter 116, Laws of 1923, provides that a search-war-
rant may be issued upon complaint in writing, verified by affi-
davit. This is a special provision dealing with search-warrants
in liquor cases, and if it could be said that there is any conflict
between it and the general provisions of the statute above, the
special provision prevails in this instance. (*Stadler* v. *City
of Helena,* 46 Mont. 128, 127 Pac. 454; *Reagan* v. *Boyd,* 59
Mont. 453, 197 Pac. 832.)

There was a substantial compliance with the provisions of
the statute so far as the procedure is concerned.

It is next contended that the record fails to disclose any
[4]  probable cause for issuing the search-warrant. So much
of the Ford affidavit as is material to this branch of the in-

quiry reads as follows: "H. E. Ford, being first duly sworn, on oath deposes and says: That he is a citizen of the United States, over the age of twenty-one years, and a resident of the state of Montana. That on the 7th day of March, A. D. 1924, he purchased intoxicating liquors from Jay English at a certain one-story yellow frame dwelling house," *etc.*

It is elementary that the magistrate—not the witness—must determine whether probable cause exists, and to that end sufficient facts must be disclosed from which the determination may be had. But we do not agree with counsel for defendant that the Ford affidavit contains only the conclusions of the affidavit. The statement, "That on the 7th day of March, A. D. 1924, he purchased intoxicating liquors from Jay English," is the statement of an ultimate fact, as distinguished from the probative facts. (*Moffat* v. *Greenwalt,* 90 Cal. 368, 27 Pac. 296.) However brief the statement may appear, it cannot be urged seriously that the magistrate could not find from it that there was probable cause to believe that English was in possession of intoxicating liquor which he was using for an unlawful purpose. The utmost for which defendant can contend is that the evidence produced at the hearing on March 22 is in sharp conflict. Judge McKinnon was required to determine the credibility of the witnesses and, in concluding that probable cause was shown, it cannot be said that he committed error.

At the trial of this cause it developed that State's Exhibit [5] 3 (liquor contained in a bottle) was the liquor which Ford claimed to have purchased from English on March 7, and the same liquor referred to by him in his affidavit upon which the search-warrant was issued.

On his cross-examination, the witness Ford testified that he was in a pool-hall in Miles City during the forenoon of March 7, and he believed it was called Kinney's pool-hall. He was then asked: "How many pool-halls do you know there were on March 7, 1924?" And again: "How do you know you

were in that one?'' And again, after the witness had testified that he had been working putting up ice, he was asked: ''And what else?'' And again, after testifying that he went to the courthouse where his affidavit was read to him, he was asked: ''And you don't know by whom?'' To each of these questions an objection was sustained, and error is predicated upon the rulings.

It is said in the brief of counsel that the purpose of asking the questions was ''to test the credibility of the witness Ford.'' The record discloses that the witness was cross-examined at great length upon every matter brought out by his direct examination; and considering the trifling character of these questions, we think it would be the rankest perversion of justice to set aside this conviction because they were not permitted to be answered.

Further in the cross-examination of Ford, he testified that [6] he played pool with a young man in Kinney's pool-hall during the forenoon of March 7. He was then asked: ''And you treated this kid to a bottle you had on your person in the toilet in that pool-hall?'' And again: ''Did you sell or give this other party from this bottle?'' And again: ''Along about February first of this year, while you were working on the ice with this fellow, state whether or not you treated him and others from a bottle you were then carrying on the hip?'' An objection to each of these questions was sustained. It is said that the purpose of asking the questions was to show that the witness was in the habit of carrying liquor, thereby laying a foundation from which the jury might infer that it was State's Exhibit 3 which the plaintiff had with him in the pool-hall before he went to the English residence. While the first two questions, if standing alone, might suggest the possibility that the affidavit upon which the search-warrant was issued was untrue—if that were a material matter—the third question was altogether immaterial for any purpose. The witness testified that he had a bottle of liquor with him when he went into the pool-hall on the forenoon of March 7,

but counsel for defendant very carefully avoided asking him whether it was the same bottle that was introduced as State's Exhibit 3. The witness was not on trial, and an affirmative answer to either or both of the first two questions would not have identified, or tended to identify, the bottle which the witness had in the pool-hall as the bottle marked State's Exhibit 3. But, furthermore, the inquiry was not a material one. As we have already observed, the Ford affidavit was sufficient upon the face of it to authorize the magistrate to issue the search-warrant, and, since the warrant was valid upon its face, the sheriff was justified in making the search, and the proceedings would not be rendered any less valid if it appeared upon the trial of this case that the truth of the statement upon which the proceedings were based was attacked, even though successfully, and neither would the evidence procured by the search be rendered thereby inadmissible. (*People* v. *Czckay,* 218 Mich. 660, 188 N. W. 376; *Bowen* v. *Commonwealth,* 199 Ky. 400, 251 S. W. 625.)

Defendant sought to show that the liquor contained in the [7] two glass jugs was not fit for consumption as a beverage, but upon objection by the state the testimony was excluded, and error is predicated upon that ruling. The evidence disclosed without controversy that the contents of the jugs was "moonshine whisky"—intoxicating liquor—the possession of which, under the circumstances disclosed in this case, was unlawful, whether it was fit for human consumption for beverage or any other purpose. (*State* v. *Centennial Brewing Co.,* 55 Mont. 500, 179 Pac. 296.)

In addition to questions which properly arise upon an [8] appeal from the judgment, we are asked to review an order of the district court denying defendant's motion for a new trial, but this cannot be done. While an appeal from an order denying a new trial in a civil action is abolished (sec. 9745, Rev. Codes), the right to appeal from such an order in a criminal case is still preserved to the defendant (sec. 12107),

and the order cannot be reviewed on an appeal from the judgment alone.   (*State* v. *Ritz,* 65 Mont. 180, 211 Pac. 298.)

We do not find any error in the record.   The judgment is affirmed.                                              *Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Galen and Stark concur.

Mr. Justice Rankin, being disqualified, did not hear the argument and takes no part in the foregoing decision.